## Hoeger v. Sherman.

(Decided December 12, 1924.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Appeal and Error—Findings of Chancellor Not Disturbed, Unless
Against Preponderance of Evidence.—Findings of chancellor on
matters of fact will not be disturbed, unless against preponder-
ance of evidence.

N. C. CURETON and EDWARDS, OGDEN & PEAKE for appel-
lant.

WALTER P. LINCOLN and SELLIGMAN & SELLIGMAN for
appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In 1914 the Biechner Preserving Company was
organized with a capital stock of $5,000.00 divided into
fifty shares of the par value of $100.00. Its business was
the manufacturing of catsup, sauces and fruit preserves,
which business it continued to prosecute in. the city of
Louisville until February, 1921, when appellant and
plaintiff below, Henry F. Hoeger, who was at that time
the owner of a majority of. its stock and its chief man-
aging and directing force, filed for it a voluntary petition
in bankruptcy in which proceedings its affairs were set-
tled under the provisions of the federal bankrupt law.
Some time in the early part of 1920, the appellee and de-
fendant below, Elmore Sherman, was the owner of forty
shares of its capital stock, the other ten shares being
owned by Herman Biechner and his wife. When defend-
ant purchased his shares he discovered that the company
was considerably involved, and through his efforts its
debts were compromised and otherwise settled, but in
doing so it was necessary for and the company did bor-
row from a Louisville bank the sum of $4,250.00 for
which Sherman was surety, and the note executed
therefor was unpaid at the time of the transaction here
involved.

The manufacturing was done under the exclusive
supervision of Henry Biechner as chemist or com-
pounder, he possessing extensive experience in that busi-
ness. Some two or three months prior to August 26,
1920, plaintiff conversed with Biechner as to the char-

acter and volume of business done by the company, and whether or not it was profitable, and generally as to its future prospects. At the same time he informed Biechner that he was thinking of quitting his salaried job and embarking in some kind of business for himself. Biechner informed him of practically the true condition of the company, as we interpret the evidence, and said to him, in substance, that the business if properly looked after and managed could be made profitable but also informed him that Mr. Sherman, the defendant, was engaged in other business and did not have time to look after the affairs of the preserving company, and that he thought Sherman would sell his stock at a reasonable valuation. Accordingly, it was agreed that plaintiff and Sherman would meet and discuss the matter of plaintiff buying his stock. The meeting was had some time in the latter part of May or June, but the evidence does not disclose which, and at that time defendant informed plaintiff that he would take $1,000.00 for thirty-five shares of his stock, the other five shares to be transferred to Biechner, and that the company should relieve Sherman from his liability on the bank note for $4,250.00. All of the machinery and other necessary articles for the prosecution of the business of the company were there and open to inspection which Sherman told plaintiff to do and to freely consult Biechner, who knew more about the affairs of the company than did Sherman. An estimated valuation of the articles on hand was shown plaintiff and which we think the evidence proves to have been practically correct. Plaintiff was furthermore informed at the time by Sherman to take his time and satisfy himself before he made up his mind to accept the proposition. Time was taken and on August 26 thereafter, Sherman's proposition was accepted and he transferred thirty-five shares of his stock to plaintiff and the latter paid him $900.00, leaving $100.00 unpaid, and which has never been paid. At the same time a new note was executed to the bank with plaintiff as surety and he deposited collateral security therewith and subsequently paid it. Sherman immediately resigned as president of the company and entirely severed his connection with it, the plaintiff taking his place in all respects.

On December 6, 1920, plaintiff filed this action against defendant to rescind the contract of purchase and in the petition he sought the recovery of a judgment

against defendant for not only the amount of money he had paid for the stock but for other items that plaintiff alleged he was compelled to pay as a consequence of the trade and the obligation assumed by him. The grounds alleged for the relief were that defendant had fraudulently misrepresented the facts as to the value of the property on hand, the debts of the concern and others affecting the valuation of the stock. The pleadings made an issue as to all the alleged grounds for relief and after preparation and submission the court dismissed the petition, from which judgment plaintiff prosecutes this appeal.

A number of incidental or collateral questions are discussed in briefs, among which is the right of one to obtain a rescission of his contract after taking possession of the property involved and exercising dominion and control over it with acquired knowledge of the fraud, and especially where he continues the operation with such knowledge until the subject matter of the contract becomes so involved as to be absorbed with debts, all of which it is claimed plaintiff did in this case. We have concluded, however, that such preliminary questions need not command our attention in this opinion because, under our practice in this character of case, we feel that we are not authorized to disturb the finding of the chancellor upon the facts.

It is true that plaintiff testified to some matters which might be considered as misrepresentations, if true, but the evidence to our minds preponderates that he was made fully aware of the true condition of the company's property and its affairs, and that he acted as much, if not more, upon the information he obtained from his personal investigations than from what the defendant represented to him. The appraisers in the bankruptcy proceedings fixed the value of the assets of the company at more than what plaintiff claims was represented to him by Sherman, and that was done after the machinery had been operated for several additional months. Some debts, not mentioned by Sherman, were presented after the purchase of the stock, but they were paid by him as he had agreed to do in his contract of sale; nor do we think that a debt, known in this record as the "glass debt" was concealed by Sherman, or any one for him, since we are convinced that it was a liability to be paid

by the company, under the contract, after Sherman's retirement.

It would serve no useful purpose to detail in this opinion the testimony of the respective parties; such a course would be an entirely unnecessary consumption of time and space. Suffice it to say that the chancellor found that plaintiff had failed to establish the facts upon which he claimed the right to the relief he sought, and the rule with us is to not disturb such findings unless we are convinced that they are against the preponderance of the evidence. If the entire proof creates in our minds no more than a doubt as to the correctness of the finding, it should then be affirmed. We are not prepared to say that the proof in this case has produced even that effect upon us, and we are sure that it has not gone beyond that so as to carry the case into the category of those wherein it becomes our duty to reject the chancellor's finding.

Finding no error sufficient to authorize our interference, the judgment is affirmed.